Good morning, your honors. My name is David Zuckman. I represent Ramon Delgado and may it please the court. Your honors, in some ways, this is a small case. It's a single false statement case with a sentence of two years, which is well within the statutory maximum. And I'm not bringing a sufficiency claim about the false statement. So why does this case have me so nervous? And it's because this particular case has a gotcha aspect to it that I find very troubling. The government had decided sometime in 2011 to 2013 that they were done with Mr. Delgado and that they were going to remove him from his position as a border patrol agent. And for years, the government looked for things to charge Mr. Delgado on a contacts question. Now, my two challenges to Mr. Delgado's conviction and sentence are actually on, there's actually a synergy, there's a relationship between them. Because it would be one thing if I was coming before your honors and Mr. Delgado had had his day before a jury where he was allowed to contest the drug trafficking allegations that caused his prosecution and which caused his sentence. But that is not what happened. Instead, we had a hearing before Judge Burns, where Judge Burns made findings about what happened in 2011 and 2012 and 2013. And that was the reason that Judge Burns imposed the two-year sentence. Now, I don't disagree that Judge Burns had his concerns and reasons for what he did. But it is the case that Judge Burns flatly ran over the argument that I, from the beginning, that the drug trafficking allegations from 2011, 2012, 2013 were not relevant conduct to the 1001 offense. The government conceded as much at the district court level when the government argued that his sentence ought to be justified by means of a variance rather than being within the guidelines. And that's a very troubling thing, to have someone convicted for one set of, for one type of conduct and then sentenced for the other, especially considering what the conduct is. Now, I know I'm probably trying to ski uphill on the vagueness question because, as the government points out, no other court has ever said that these questions are too vague to be answered, that there have been convictions that have been upheld. But I would note to your honors that there is nothing in these statements that should give this court any comfort. Undoubtedly, your honors have all answered those questions before. Undoubtedly, your honors have all undergone background checks and had to list out these people. And your client answered those questions before as well and answered it in this case and listed two sisters-in-law. And then there are follow-up questions after the initial question that ask you for more detail. So, should you have any confusion, the follow-up questions then ask about the nature of the relationship, who the people are, all those sorts of things that would allay any concern that you don't know what you're answering. How would you have the government rephrase that question? Reading that question, it just appears straightforward to me, so I don't understand how it's ambiguous. How should it have been phrased? So the terms close and continuing, I don't, it's unclear how those could be clear. Like, what does it mean for a relationship to be close and bonded by affection? So, if it's subjective, it's ambiguous? Of course, one person's definition of close might be different from another's. It just makes it subjective. It doesn't make it ambiguous. Well, it is correct to say that we could agree what the word close is, and you and I might have the same definition of that word. But it doesn't mean that there would be general agreement about what makes something close. For instance, in my family, there are godparents. However, that is a nominal role. So these individuals that he omitted were, were they the godparents of his children, or he was the godparents of their children? There was some familial relationship. He was the godparents of their children. And he socialized with them quite frequently, spent the evening at their home, had photos of them in his house, all those sorts of things? Quite frequently would be like several times a year, but it wouldn't be like several times a week. Sure. They lived in Mexico, he lived in the United States. Correct. And Mr. D... He did have photographs of him with them in his home, correct? The photographs in the home were from the home in Mexico, the home of Gambino. Okay, so the other people had photographs of him in their home. Correct. Correct. Mr. Delgado comes from a large family in Mexico. He has over 60 first cousins. And arguably, any of those people would have fit the category just as well as what the not only just maintain relations with then, that he maintains relationships with now, but then the question... The two people he omitted happened to be international drug traffickers. That, that is correct, Your Honor. It is also correct to say that, as Your Honor noted, Mr. Delgado, when he twice enlisted in the United States military to go fight for our country overseas, filled out the same background check, and he listed the same people. So he didn't change anything. And the government had approached Mr. Delgado in 2011 about these particular people. So Your Honor is correct. I mean, it's... How could I bring a sufficiency argument about what constitutes close and continuing? How would that argument even be possible in as much as we're all just going to be able to say it's our own personal definition? And there's a double problem here, which is that the particular statement is close, continuing, and bonded by affection, obligation. Isn't it, is it, it's and or, isn't it? Correct. So, and this went to the jury. I mean, whether this question was vague or whether it was sufficiently clear that he could answer it, a jury decided that. Correct. But it would also allow the government to charge, list your 50 closest people in your life. And you have to list out all those 50 people. And if the jury disagrees about which 50 should have been in, you can be held in custody. So it is, this kind of question poses a lot of danger, not just for someone like Delgado, but it poses danger for everyone. Because when it is this subjective, and I did point to the fact that... So not everyone is answering these questions. Mr. Delgado is answering these questions because he was the United States Border Patrol officer working on the southwest border to Mexico, where Border Patrol agents are apprehending drug dealers. So the significance of his contacts with foreign nationals was pretty high. It was a significant question for the government to ask him and other Border Patrol agents, not just randomly any person on the street. Correct. And I suppose that there will be ways to word that question in such ways that it would be not subjective. So... Your argument is subjective means ambiguous. Well, in some... Such that a reasonable person could not come up with an answer, couldn't possibly be expected to answer that question. I agree that we are heading towards a tautology in that anything that is subjective is necessarily ambiguous, as I do not have direct access to anyone else's brain other than my own. So... So my understanding from our case law is you look at these ambiguity arguments sort of in two ways. One, is it fundamentally ambiguous? Two, well, if there might be some ambiguity, it's not entirely clear. You look at the context. When you look at the context here, I think your client has a tough argument. Well, with that, then I should probably turn to discussing it here. Yeah, he has a tough argument, unless you're arguing that it's just fundamentally just core, fundamentally... I think that this particular question allows... And that's more of an objective standard than it is subjective. That's correct, because it asked Mr. Delgado to self-define what constitutes close and continuing. So it just says, are you bonded by affection, loyalty, obligation? And it doesn't tell him what are the metrics used to decide such things. So why should he exclude his 60 cousins or a couple of hundreds? Well, I have a number of cousins that I could probably be in the same room with and not recognize them. But that's different from the people who are godparents to my children and who I visit multiple times a year, and they keep photographs of me in their home. I mean, that's a pretty obvious distinction to draw. Because there's overlap between the two families. So that's the other issue, is that it's not just that they had met somewhere on the street and struck up a friendship. There's overlapping familial relations there. So the fact that there's overlapping photographs and visits, well, that's kind of a consequence of the larger family dynamic. I did want to turn briefly to the sentencing issue since the main case I cited was the Kelly case out of the Tenth Circuit and Judge Kelly from the Tenth Circuit. It seems to me that the court, if the guidelines are supposed to mean anything, it's supposed to be that they're supposed to guide discretion. If Judge Burns can simply disregard them because he wants to impose a harsh sentence, what stops another judge from disregarding them to impose a lenient sentence? Judge Burns gave zero weight to the guidelines. You're not supposed to do that. With that, I have about 30 seconds left, so I'd like to reserve that for rebuttal. Okay. May it please the court. Zach Howe on behalf of the United States. I'll begin briefly with sentencing. 18 U.S.C. 3661 and the accompanying guidelines provision section 1B.1.4 say that there is, quote, no limitation on the conduct that a court can consider in its 3553A analysis. In fact, the Watts case from the Supreme Court applies that provision, those provisions, to say that a court can, in fact, even consider acquitted conduct so long as it finds by a preponderance of the evidence that the conduct did occur. Here, the district court applied even a heightened standard out of an abundance of caution. It applied a clear and convincing evidence standard. This is at page 87 of the record. And then it found that this drug trafficking related activity by Delgado did, in fact, occur by that standard. That's at page 94 through 96 of the record. So the court was on clear footing in considering that conduct. There was no issue as to substituting a different set of guidelines or applying enhancements based on the drugs. This was purely an analysis of whether to apply a variance. In fact, the court says at page 70 and 71 that it is applying the guidelines for the false statement and that's it. And then turning to vagueness, as every court to address this issue has held, there is no nationals equip question. That's particularly true here because it's simply not credible that Delgado, a border patrol agent, would not have known that he needed to disclose his intimate ties to drug traffickers on a form designed to assess his susceptibility to foreign exploitation and influence. And that is the correct inquiry here. This court's Culleton case says that you have to ask whether the defendant gave an answer that was false as he understood it based on the context of the question, the context of the answer, and the evidence in the case. And here the evidence clearly shows that he did. He listed two sisters-in-law even though he said he was only in contact with those sisters quarterly. And yet he's omitting relationships that are much closer and that pose a much greater risk of exploitation. As the court has already noted, he visits Bernal and Martinez frequently. He's the godfather to their daughter. They go to restaurants and fairs and birthdays and baptisms together. They go to quinceañeras together. There are pictures of Delgado in their house. And then, of course, they have this shared interest in drug trafficking. The testimony from Bernal herself and the housekeeper showed that Delgado was there when they were discussing drug trafficking, when they were paying load drivers, and in fact he was even coaching load drivers on how to get across the border. The housekeeper also testified that on one occasion Delgado accompanied Martinez to the mechanic shop and then took load cars, with drugs, back to Bernal and Martinez's house. So he has a shared interest in drug trafficking. And the final piece of evidence, which I think is telling here, is that he's taking active measures to cover up his ties to Bernal and Martinez. The housekeeper testified that he took off his Border Patrol uniform before entering the house so that the cameras in the house wouldn't pick up that he was a Border Patrol agent. And after Martinez was arrested in 2014, he calls Bernal and says, you need to take the pictures of me out of your house, because he didn't want Mexican authorities to discover the ties between them if they showed up at the house. So given those intimate ties, those ties to drug trafficking, it's clear that as applied to him, he would have known that he needed to disclose this relationship, but he didn't. And therefore, there is no fundamental ambiguity. So if there are no questions, then... The 10th Circuit on the sentencing issue. Sure. So the Allen case and the cross case from the Sixth Circuit, those are both addressing Section 1B.1.3. And that section governs what conduct can be considered for purposes of calculating the guidelines and for purposes of applying enhancements. So in those cases, you had instances where, for example, the conviction was for drug I'm going to use the guidelines for aggravated sexual assault, which was about three times as high. And then it imposed sentence based on those guidelines. That undisputedly did not happen here. The parties, the PSR and the court all agreed that the guidelines were the guidelines for the false statement conviction. It was a zero to six month guidelines range. And then it simply considered the drug trafficking activities as aggravating conduct when deciding whether to vary the same way it considered mitigating conduct when deciding to vary, even though that conduct didn't relate to the offense. In fact, if you look at page 100 of the record, the court says that I would have given a year more on the sentence, but for Delgado's military service. So just as the court can consider that sort of unrelated mitigating conduct, it can also consider unrelated, and here there were relations, but we'll call it unrelated aggravating conduct under the statute 18 U.S.C. 3661 under the guidelines and under the Pepper and Watts decisions from the Supreme Court. There are no other questions I'd ask that this court affirm, and I'll yield the remainder of my time. Thank you. Thank you. Thank you for your honors. Two points. The first being that the government interviewed 27 load drivers. They asked all of them about Mr. Delgado. Not a single one identified him. That's because their cooperating sources were making stuff up. That's why the government wouldn't take the case to a jury. The second point is the relatedness principle. All of the cases that talk about The government conceded below that the drug trafficking was not relevant conduct. By definition, if it's not relevant conduct, it's not relevant. It violates the relatedness principle, and I hope you reverse the sentence. Thank you, your honors. Thank you. Thank you, counsel. We appreciate your arguments this morning. The matter submitted at this time.
judges: Kelly, Paez, Bade